## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ARBEN BAJRA, JOHN BRENNAN,
AUNALI KHAKU, DAVID KUK,
CARMEN MOORMAN, and
VITTORIO MUZZI, individually and on
behalf of all others similarly situated,

        *Plaintiffs*,

        v.

DELTA AIR LINES, INC.,

        *Defendant*.

Index No. 1:24-CV-03477-MHC

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' <u>CONSOLIDATED THIRD AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................3

    A.    Allegations in Plaintiffs' Third Amended Complaint......................3

    B.    Procedural History .........................................................................6

ARGUMENT ........................................................................................................8

    I.    The International-Travel Plaintiffs Cannot Have It Both Ways: Either Their Montreal Convention Claim (Count I) Must Be Dismissed or Their State Law Breach of Contract Claims (Counts II and III) Are Preempted. ...........................................................8

        A.    Under the Reasoning in the May 2025 Order, the International-Travel Plaintiffs' Montreal Convention Claim (Count I) Fails Because Their Injuries Sound in Nonperformance, Not Delay. ..........................................10

        B.    In the Alternative, to the Extent Plaintiffs Have Stated a Cognizable Claim Under the Montreal Convention, the Convention Preempts Their State Law Contract Claims. ..............15

    II.    Plaintiffs' Claims for Expense Reimbursement Under Delta's Temporary Reimbursement Waiver (Counts II and V) Are Limited to Any Amounts Incurred for Alternative Air or Ground Transportation in Excess of Their Unused Delta Tickets. .......................17

        A.    The Temporary Reimbursement Waiver Concerns Only Two Limited Categories of Alternative Transportation Expenses.........17

        B.    Plaintiffs' Claimed Incidental Expenses Unrelated to Replacement Air or Ground Transportation Are Not Reimbursable.................................................................................20

        C.    Plaintiffs' Replacement Air or Ground Transportation Expenses Are Reimbursable Only for Amounts in Excess of Their Unused Delta Tickets. .........................................21

CONCLUSION ..................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Air France-KLM*,
165 F. Supp. 3d 1302 (N.D. Ga. 2016)...................................................... 10, 11

*Badar v. Swissport USA, Inc.*,
53 F.4th 739 (2d Cir. 2022) .....................................................................11

*Benjamin v. Am. Airlines, Inc.*,
32 F. Supp. 3d 1309 (S.D. Ga. 2014) ............................................. 8, 9, 11, 12

*Bombin v. Sw. Airlines Co.*,
529 F. Supp. 3d 411 (E.D. Pa. 2021)...................................................... 11, 13

*Dusko v. Delta Air Lines, Inc.*,
20-cv-01664, slip op., ECF No. 70 (N.D. Ga. March 2, 2022).....................25

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,
525 U.S. 155 (1999).................................................................................9

*Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*,
615 F.3d 1305 (11th Cir. 2010) .................................................................9

*Hebert v. Am. Airlines, Inc.*,
2016 WL 3517795 (E.D. La. June 27, 2016) ......................................... 12, 13

*In re Nigeria Charter Flights Contract Litig.*,
520 F. Supp. 2d 447 (E.D.N.Y. 2007).....................................................9, 14

*Magan v. Lufthansa German Airlines*,
339 F.3d 158 (2d Cir. 2003) ......................................................................9

*Marotte v. Am. Airlines, Inc.*,
296 F.3d 1255 (11th Cir. 2002) .............................................................8, 15

*Oparaji v. Virgin Atl. Airways, Ltd.*,
2006 WL 2708034 (E.D.N.Y. Sept. 19, 2006)............................................10

*Pettaway v. Miami Air Int'l, Inc.*,
624 F. Supp. 3d 1268 (M.D. Fla. 2022) ................................................ 15, 16

**Other Authorities**

Christopher E. Cotter, *Recent Case Law Addressing Three Contentious Issues in the Montreal Convention,* 24 No. 4 Air & Space L. 9 (2012).......................11

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs' Consolidated Third Amended Class Action Complaint (the "TAC") asserts five claims seeking two categories of relief: (1) refunds of ticket fares Plaintiffs paid for Delta flights on which they did not fly (Count IV); and (2) reimbursement of various out-of-pocket expenses Plaintiffs allegedly incurred as a result of a delay or cancellation of their Delta flights (Counts I, II, III, and V).

Delta does not seek to dismiss Plaintiffs' claim in the first category (Count IV) except with respect to Plaintiff Khaku, who fails to allege any entitlement to a refund. *See infra* at 24–25. Delta *does*, however, seek to dismiss or substantially limit the four claims in the second category, which seek reimbursement of Plaintiffs' out-of-pocket expenses. Specifically, Delta seeks to dismiss Counts I, III, and V, and to substantially limit the scope of Count II.

In Count I, five Plaintiffs claim that Delta has violated the Montreal Convention by failing to reimburse their expenses. But the May 2025 Order forecloses that claim because it found that the Montreal Convention does not cover Plaintiffs' claims for expense reimbursement. ECF No. 60 at 25–28. As this Court explained, the injuries that Plaintiffs allege here sound in nonperformance of contractual obligations, not "delay" within the meaning of the Convention, and therefore Plaintiffs' breach of contract claims fall outside the Convention's preemptive scope. *Id.* at 27–28. The necessary consequence of that holding is that

1

Plaintiffs have no claim under the Convention, even if they may pursue claims under state law. Count I must be dismissed.

In Count III, five Plaintiffs allege they are entitled to expense reimbursements under Delta's International and Canadian Contracts of Carriage, without any modification. That claim effectively replicates Count II in Plaintiffs' previous complaint, which this Court already dismissed. ECF No. 60 at 56–64. As the May 2025 Order explains, Plaintiffs failed to state a claim for expense reimbursements under the terms of those Contracts as they existed at the time Plaintiffs purchased their tickets. *Id.* at 62–64. The fact that the Contracts incorporate certain liability rules in the Montreal Convention is irrelevant because, under controlling Supreme Court and Eleventh Circuit precedent, Plaintiffs either have a substantive claim under the Convention (in which case all their state law contract claims are preempted), or they do not (in which case the incorporation of the Convention's liability rules is no basis for liability here). Either way, Count III must be dismissed.

In Counts II and V, Plaintiffs allege they are entitled to expense reimbursements under Delta's Contracts of Carriage as modified by a Temporary Reimbursement Waiver that Delta announced in the wake of the CrowdStrike outage. But as its specific terms make clear, Delta did not promise in the Temporary Reimbursement Waiver to reimburse an open-ended set of incidental expenses, like the hotels, meals, cruises, parking tickets, and other out-of-pocket expenses

2

Plaintiffs seek to recover. Rather, it expanded the reimbursement eligibility to only two discrete categories of expenses: (i) ticket fares for flights on other airlines to replace a delayed or cancelled Delta flight, and (ii) expenses for alternative ground transportation to a customer's destination. Moreover, the Waiver entitles customers only to reimbursement of amounts *after subtracting the value of their unused Delta tickets* to prevent double recoveries for customers also seeking refunds. Delta's unmodified Contracts of Carriage continue to govern any other expenses unrelated to alternative travel and those Contracts, as the Court has already recognized, do not cover the expenses Plaintiffs seek here. ECF No. 60 at 62–64.

When each individual Plaintiffs' allegations are scrutinized, the only Plaintiffs with plausible expense reimbursement claims are Bajra, Kuk, Muzzi, and Moorman. Plaintiffs Brennan and Khaku do not have plausible claims. Accordingly, Count V (for which Plaintiff Brennan was the only named Plaintiff) must be dismissed, and Count II should be limited only to claims for alternative transportation expenses and only in excess of Plaintiffs' unused Delta ticket fares.

## BACKGROUND

### A. Allegations in Plaintiffs' Third Amended Complaint

This putative class action arises from Plaintiffs' allegations that Delta Air Lines, Inc. ("Delta") failed to provide them with adequate refunds or reimbursements after their flights were delayed or cancelled in the wake of a global

technology outage caused by cybersecurity firm CrowdStrike. ECF No. 82, TAC ¶¶ 1–26. The outage occurred on July 19, 2024, when CrowdStrike deployed untested and faulty software updates onto its customers' computers, causing millions of Microsoft Windows-based systems to suddenly stop working. *Id.* ¶¶ 2–3, 130–131. While the outage affected industries of all kinds around the globe, airports and airlines were particularly hard hit because critical systems for scheduling and flight logistics run on Microsoft Office365. *Id.* ¶¶ 131–35. As a result, in the days after the CrowdStrike outage, many airlines' operations were crippled, and thousands of flights were delayed or cancelled. *Id.* ¶¶ 134–37.

Plaintiffs are six individuals who purchased tickets on Delta flights that were delayed or cancelled in the days after the CrowdStrike outage. *Id.* ¶¶ 30–127. Five of them (Plaintiffs Bajra, Khaku, Kuk, Moorman, and Muzzi, the "International-Travel Plaintiffs") purchased tickets to travel on international flights to or from the United States. *Id.* Plaintiff Brennan purchased a domestic ticket. *Id.* ¶ 46. Plaintiffs allege they incurred thousands of dollars of expenses after their flights were delayed or cancelled, including alternative flights, rideshares, hotels, meals, and prepaid vacation experiences, and that Delta is obligated to both refund their tickets and reimburse all their expenses. *Id.* ¶¶ 30–127. Plaintiffs further allege that the fallout from the CrowdStrike outage, the largest technology outage in history, was "entirely

4

within Delta's control," and that Delta either caused or failed to take reasonable measures to prevent the resulting disruption. *Id.* ¶¶ 138–41, 152–57, 165–68.[1]

Additionally, Plaintiffs allege that beginning on July 22, 2024, Delta announced a change in its expense reimbursement policy that also modified its Contracts of Carriage. *Id.* ¶¶ 182–84. Specifically, Plaintiffs allege that Delta issued a Temporary Reimbursement Waiver, which provided that for customers on flights that were delayed or cancelled between July 19 and July 28, 2024, Delta would expand its list of expenses eligible for reimbursement to include alternative air or ground transportation to the customer's destination after subtracting the value of the customer's unused Delta ticket. *See, e.g., id.* ¶ 184.

The TAC asserts five claims. One claim, **Count IV**, alleges that Delta is obligated under its Contracts of Carriage to refund Plaintiffs' unused ticket fares for their delayed or cancelled Delta flights. *Id.* ¶¶ 281–301. The remaining four claims allege that Delta is obligated to reimburse Plaintiffs for all their alleged out-of-pocket expenses. **Count I** alleges that Delta is liable to reimburse Plaintiffs' expenses under the Montreal Convention. *Id.* ¶¶ 214–36. **Counts II and V** allege that Delta is liable for Plaintiffs' expenses under Delta's Contracts of Carriage as modified by the Temporary Reimbursement Waiver. *Id.* ¶¶ 237–68, 302–13. **Count**

---

[1] Plaintiffs addressed these allegations in prior briefing, *see* ECF No. 44-1 at 2–3, 24–25, and while the Court must treat them as true for purposes of this motion, the evidence does not support them.

**III** alleges that Delta is liable for Plaintiffs' expenses under the Contracts of Carriage without any Temporary Reimbursement Waiver modification. *Id.* ¶¶ 269–80.

### B. Procedural History

Five of the current Plaintiffs commenced this action on August 6, 2024—less than three weeks after the CrowdStrike outage. ECF No. 1. Like the TAC, Plaintiffs' initial complaint sought ticket fare refunds and expense reimbursements under Delta's Contracts of Carriage. *Id.* ¶¶ 114–53. It also alleged claims for fraud, unjust enrichment, and violations of various consumer protection statutes. *Id.* ¶¶ 161–235. After an initial motion to dismiss (ECF No. 21), a first pleading amendment (ECF No. 27, 28), and the consolidation of Plaintiffs' action with a separate action commenced by Plaintiff Khaku (ECF No. 32), Plaintiffs filed a consolidated second amended complaint, which added a claim under the Montreal Convention. ECF No. 33. Delta again moved to dismiss. ECF No. 44.

On May 5, 2025, the Court issued an Order resolving the motion to dismiss. ECF No. 60. As an initial matter, the Court determined that the International-Travel Plaintiffs' claims under state law, which sought damages arising from Delta's alleged failure to provide contractually required refunds and reimbursements, sounded in nonperformance, not "delay" under Article 19 of the Montreal Convention. *Id.* at 27–28. Accordingly, the Court concluded that the Convention did not preempt those Plaintiffs' state law claims. *Id.* The Court, however, did not

consider whether Plaintiffs had stated a viable claim under the Convention itself because Delta had argued in favor of preemption and therefore had not sought dismissal of that claim. *See* ECF No. 44-1 at 9–11.

With respect to the state law claims, the Court dismissed all of Plaintiffs' non-contract related claims, holding they are preempted by the Airline Deregulation Act. ECF No. 60 at 32–40. As to Plaintiffs' claims based on alleged breaches of Delta's Contracts of Carriage, the Court held that several Plaintiffs had stated plausible claims for refunds (*id.* at 47–56) but none had stated a plausible claim for expense reimbursements (*id.* at 62–64). The latter is because Plaintiffs' allegations confirmed that their expenses were either not covered under the Contracts, or, to the extent they were, Plaintiffs admitted that Delta provided the required reimbursement. *Id.*

On July 18, 2025, Delta filed a motion for judgment on the pleadings arguing that the Court's May 2025 Order foreclosed Plaintiffs' claim under the Montreal Convention. ECF No. 67, 73. Subsequently, Plaintiffs sought leave to file a third amended complaint, which added new claims arguing that the Temporary Reimbursement Waiver constituted a binding modification of Delta's Contracts of Carriage even if it was not supported by any additional consideration. ECF No. 68.

On January 23, 2026, the Court granted Plaintiffs' motion for leave to amend and denied Delta's motion for judgment on the pleadings as moot. ECF No. 81. The Court found Plaintiffs' proposed amendments to the Montreal Convention claim not

"clearly insufficient or frivolous on [their] face" because they were "numerous and involve a complex area of law," but noted that its finding "does not mean the sufficiency of [the Convention claim] could not be challenged in a future motion." *Id.* at 16–17, n.9. The Court also found that two of Plaintiffs new contract claims arising from the Temporary Reimbursement Waiver (Counts II and V here) were also "not frivolous" but that they too could be challenged in a future motion. *Id.* 19. After Plaintiffs filed the TAC, this motion followed.

## ARGUMENT

**I.  The International-Travel Plaintiffs Cannot Have It Both Ways: Either Their Montreal Convention Claim (Count I) Must Be Dismissed or Their State Law Breach of Contract Claims (Counts II and III) Are Preempted.**

The International-Travel Plaintiffs continue to seek damages under both the Montreal Convention (Count I) and Georgia contract law (Counts II and III) for the same injuries. *See* TAC ¶¶ 214–80. Under settled law, that is impermissible.

The Montreal Convention is a "treaty of the United States" that "'sets forth uniform rules for claims that arise out of incidents that occur during international air transportation.'" *Benjamin v. Am. Airlines, Inc.*, 32 F. Supp. 3d 1309, 1314–15 (S.D. Ga. 2014) (quoting *Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1258–59 (11th Cir. 2002)). Under Article 29 of the Convention, "any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in

this Convention….”  ECF No. 44-11, Montreal Convention, at Art. 29.  Federal courts interpreting this language uniformly recognize that the Convention preempts all state law claims within its scope.  *See, e.g.*, *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 172–75 (1999) (describing the “preemptive effect” of identical language in the Warsaw Convention—the Montreal Convention’s predecessor[2]); *Eli Lilly & Co. v. Air Exp. Int’l USA, Inc.*, 615 F.3d 1305, 1314 n.4 (11th Cir. 2010) (“Article 29 of the Convention preempts state law actions falling within its scope”).

Thus, “[a] passenger whose injuries fall within the scope of the … Convention is either entitled to recovery under the Convention or not at all.”  *E.g.*, *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003).  Alternatively, a passenger whose injuries fall *outside* the scope of the Convention may pursue relief under state law but has no claim for damages under the Convention itself.  *See In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 455 (E.D.N.Y. 2007) (finding plaintiffs’ injuries were not “within the substantive scope of” the Convention and thus their contract claims were not preempted, but, “by the same logic,” they had no cognizable claim under the Convention itself).

---

[2] “Although the Warsaw Convention no longer applies to claims arising after November 2003, the caselaw developed under it is regarded as applicable in the interpretation of the Montreal Convention’s equivalent language.”  *Benjamin*, 32 F. Supp. 3d at 1315.

The International-Travel Plaintiffs' assertion that they may recover under *both* the Montreal Convention (Count I) *and* Georgia contract law (Counts II and III) runs headlong into the Convention's preemption provision. Either (1) the International-Travel Plaintiffs' injuries fall within the scope of the Convention, in which case they may pursue relief under the Convention but their contract claims under Georgia law are preempted; or (2) their injuries do not fall within the scope of the Convention, in which case their claim under the Convention must be dismissed but their contract claims are not preempted. Both cannot be true.

A.     **Under the Reasoning in the May 2025 Order, the International-Travel Plaintiffs' Montreal Convention Claim (Count I) Fails Because Their Injuries Sound in Nonperformance, Not Delay.**

In the May 2025 Order resolving Delta's last motion to dismiss, this Court held that the International-Travel Plaintiffs' claims fall outside the scope of the Montreal Convention because they seek recovery for "nonperformance" of a contractual obligation—not "damages sustained as a result of delays." ECF No. 60 at 27–28. That forecloses their claim under the Montreal Convention (Count I) here.

"To determine 'whether a claim falls within the scope of the Convention, courts are directed to look to its liability provisions.'" *Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302, 1311 (N.D. Ga. 2016) (quoting *Oparaji v. Virgin Atl. Airways, Ltd.*, 2006 WL 2708034, at *2 (E.D.N.Y. Sept. 19, 2006)). Article 19—the liability provision invoked in Count I—provides: "The carrier is liable for damage

10

***occasioned by delay*** in the carriage by air of passengers, baggage or cargo." ECF No. 44-11, Montreal Convention, at 8, art. 19 (emphasis added). "Courts distinguish claims sounding in 'delay' (which are *not* preempted by the Montreal Convention) from claims sounding in 'nonperformance' (which are not preempted by the Montreal Convention)." *Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 422 (E.D. Pa. 2021). "However, '[w]hat constitutes a 'delay' under the Montreal Convention is not always clear.'" ECF No. 60 at 26 (citing *Bombin*, 529 F. Supp. 3d at 422).

Several cases distinguish "delay" claims from "nonperformance" claims based on whether the airline ultimately transports the plaintiff or at least offers alternate transportation. *See, e.g.*, *Benjamin*, 32 F. Supp. 3d at 1317; *Ahmed*, 165 F. Supp. 3d at 1312; *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 751 (2d Cir. 2022); Christopher E. Cotter, *Recent Case Law Addressing Three Contentious Issues in the Montreal Convention,* 24 No. 4 Air & Space L. 9, 12 (2012) (collecting cases). As the *Benjamin* court explained:

> If the airline ultimately transports the passenger or the passenger refuses the airline's offer of a later flight, the claim will be for delay, governed by the Montreal Convention. Where the airline simply refuses to fly passengers, without offering alternate transportation, then the claim will likely be for nonperformance.

32 F. Supp. 3d at 1317 (cleaned up).[3]

---

[3] In Delta's previous motion to dismiss, Delta took the position that, under the standard articulated in *Benjamin* and cases like it, the International-Travel Plaintiffs'

In its May 2025 Order, however, the Court concluded that the test articulated in cases like *Benjamin* does not apply here. Instead, the Court determined that regardless of whether the International-Travel Plaintiffs ultimately flew on their Delta flights or whether Delta offered them alternate travel options, their claims sound in nonperformance, not delay, because they arise from Delta's alleged failure to provide promised refunds or reimbursements. *Id.* at 26–28.

To illustrate the point, the Court relied on *Hebert v. American Airlines, Inc.*, in which a plaintiff brought state law claims alleging that the airline refused to refund certain service charges in violation of its contractual obligations. 2016 WL 3517795, at *1–3 (E.D. La. June 27, 2016). In *Hebert*, as here, the airline moved to dismiss, arguing that the plaintiff's fell within the scope of the Montreal Convention and were therefore preempted. *Id.* The court disagreed, holding that "delay is not what gave rise to [the plaintiff's] damages. Rather, it was the refusal of [the airline], after the fact, to refund the group in full that has aggrieved [the plaintiff]." *Id.* at *3. As the court explained, "the contractual issue of reimbursement" is "independent from that of transportation," and thus whether the airline ultimately transported the plaintiff or offered alternate transportation made no difference. *Id.* In a "dispute strictly

---

claims do arise from delay, and the Convention therefore preempts them, because no Plaintiff alleges that Delta simply refused to fly them without offering alternate transportation. *See* ECF No. 44-1 at 10–11.

12

concerning fees," the claim is one for nonperformance and thus falls outside the scope of the Convention. *Id.*[4]

Applying this reasoning to the claims at issue here, this Court determined that the International-Travel Plaintiffs' state law claims fall outside the scope of Article 19 because they do not seek "damages sustained as a result of delays." ECF No. 60 at 28. Instead, like the plaintiff in *Hebert*, they "seek refunds and reimbursements that were specifically promised to them when they purchased their airline tickets from Delta." *Id.* Accordingly, the Court concluded that the International-Travel Plaintiffs' state law claims could proceed because the Convention does not preempt them. *Id.*

That same reasoning requires dismissal of their Convention claim (Count I). The injuries for which the International-Travel Plaintiffs seek damages under the Convention are precisely the same injuries for which they seek damages under state law—namely, "out-of-pocket expenses" arising from "alternative air transportation, ground transportation, hotel accommodations, and/or meals," as well as "additional

---

[4] One other case has reached a similar conclusion. *See Bombin*, 529 F. Supp. 3d at 422 (holding plaintiff's claims were outside the scope of the Montreal Convention because they arose from allegations concerning airline's "cancellation of flights and its subsequent failure to offer refunds per its Contract of Carriage"). However, unlike the International-Travel Plaintiffs here, the plaintiffs in *Hebert* and *Bombin* did not assert separate claims under the Convention itself—so those cases do not stand for the proposition that Convention claims and state law contract claims arising from the same injuries may coexist.

expenses" related to lost or delayed baggage.  *See* TAC ¶¶ 231–35 (describing damages sought under Count I), ¶ 267 (describing damages sought under Count II), ¶ 279 (describing damages sought under Count III).  If those injuries fall outside Article 19's preemptive scope (as the May 2025 Order held), they likewise cannot support a claim under Article 19 itself, which means Count I cannot proceed.

The *Nigeria Charter Flights* case is instructive.  520 F. Supp. 2d at 449–56. There, as here, plaintiffs alleged claims under the Montreal Convention together with claims under state law for breach of contract and fraud arising from flight interruptions and cancellations.  *Id.* at 449–51.  The court analyzed the common allegations underlying both the Convention and state law claims and determined the claims were "grounded in nonperformance, not delay," and thus they were "not … within the substantive scope of Article 19."  *Id.* at 452–55.  Accordingly, the court concluded, "Article 19 does not preempt plaintiffs from pursuing [their state law] claims."  *Id.* at 455.  "However," the court continued, "by the same logic … plaintiffs have failed to allege delay under Article 19."  *Id.*  Accordingly, the court granted summary judgment for the air carrier, dismissing the Convention claim.  *Id.*[5]

At bottom, across multiple rounds of briefing, Plaintiffs have failed to identify *any* controlling precedent allowing a claim under the Montreal Convention to

---

[5] The court had not previously considered a Rule 12 motion in the case, which had been transferred from the Panel on Multidistrict Litigation and consolidated.  *See Nigeria Charter Flights*, 520 F. Supp. 2d at 451; *see also* Case No. 1:04-md-01613.

proceed alongside claims under state law seeking the same damages. To Delta's knowledge, none exists. The International-Travel Plaintiffs may pursue relief under the Convention or state law, but not both. And given the Court's prior ruling, Georgia contract law is the only route that remains. ECF No. 60 at 27–28.

**B.      In the Alternative, to the Extent Plaintiffs Have Stated a Cognizable Claim Under the Montreal Convention, the Convention Preempts Their State Law Contract Claims.**

If the Court is inclined to reexamine the preemption question in light of Plaintiffs' new complaint, the fact that the International-Travel Plaintiffs now expressly base their state law breach of contract claims (Counts II and III) on the International and Canadian Contracts' incorporation of the Montreal Convention provides a separate basis to hold those claims preempted.

As discussed above, "'both the Supreme Court and the Eleventh Circuit have made clear that the Montreal Convention is the exclusive mechanism of recovery for'" claims within its scope. *Pettaway v. Miami Air Int'l, Inc.*, 624 F. Supp. 3d 1268, 1281 (M.D. Fla. 2022) (quoting *Marotte*, 296 F.3d at 1255). "Stated another way, 'for all air transportation to which the Montreal Convention applies, if an action for damages falls within one of the treaty's damage provisions, then the treaty provides the sole cause of action under which a claimant may seek redress for his or her injuries." *Id.* (quoting *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1360 (S.D. Fla. 2008)).

Here, the International-Travel Plaintiffs allege that the basis for their breach of contract claim against Delta is, at least in part, the incorporation of the Montreal Convention's liability provisions into Delta's International and Canadian Contracts. *See, e.g.*, TAC ¶¶ 245–51, 259 (citing provisions of the International and Canadian Contracts, which incorporate the liability rules of Montreal Convention, as the basis for contract liability in Count II); *id.* ¶¶ 273–75, 278 (again citing provisions of the International and Canadian Contracts, which incorporate the liability rules of Montreal Convention, as the basis for contract liability in Count III). Indeed, the Convention's liability rules are the ***only*** asserted basis for liability under Count III, meaning that claim is deficient on its face.[6]

In other words, the TAC asserts that the International-Travel Plaintiffs' claims for expense reimbursement *are* in fact viable under the liability rules of the Convention, and that those rules may be enforced by resorting to Georgia contract law. *E.g.*, *id.* ¶ 278. As discussed above, that position cannot be squared with the Court's May 2025 Order, which holds that the International-Travel Plaintiffs' injuries are *not* within the scope of the Convention. ECF No. 60 at 27–28. But to

---

[6] A breach of contract claim based solely on alleged violations of the Montreal Convention's liability rules is necessarily preempted. *See, e.g.*, *Pettaway*, 624 F. Supp. 3d at 1281. Either (i) Plaintiffs have alleged compensable injuries under the Convention's liability rules, and thus Count III, like their other state law claims, is preempted and must be dismissed, or (ii) Plaintiffs have not alleged compensable injuries under the Convention's liability rules, and the Contracts' incorporation of those rules provides no basis for liability here. Regardless, Count III cannot proceed.

the extent the Court finds otherwise here—*i.e.*, that the International-Travel Plaintiffs' injuries *are* compensable under the Convention—the Court should dismiss their contract claims (Counts II and III) and permit them to proceed only under the Convention (Count I).

**II.      Plaintiffs' Claims for Expense Reimbursement Under Delta's Temporary Reimbursement Waiver (Counts II and V) Are Limited to Any Amounts Incurred for Alternative Air or Ground Transportation in Excess of Their Unused Delta Tickets.**

Plaintiffs assert two causes of action (Counts II and V) alleging that Delta breached its Contracts of Carriage by failing to reimburse certain expenses as required under the Contracts as modified by Delta's Temporary Reimbursement Waiver (the "Waiver"). While several Plaintiffs may state plausible claims for relief, those claims do not encompass the wide-ranging expenses Plaintiffs seek to recover.

**A.      The Temporary Reimbursement Waiver Concerns Only Two Limited Categories of Alternative Transportation Expenses.**

Plaintiffs assert that the Waiver significantly expanded Delta's expense reimbursement obligations to cover an open-ended set of customers' incidental expenses arising from the CrowdStrike outage, including "hotels, meals, and other out-of-pocket expenses…" TAC ¶¶ 267, 313. That is not the case. As the language cited in the TAC demonstrates, the Waiver's actual terms are narrowly circumscribed. The Waiver provides *only* that:

> For travel between July 19–28, 2024, customers experiencing a flight cancellation or significant delay (>3

hours) may request reimbursement for the following expenses incurred due to their trip disruption, above and beyond [Delta's] standard policy:

- The fare paid to purchase another airline ticket in the same class of service, after subtracting the value of the unused Delta ticket

- Alternative transportation methods such as rental cars, rideshares, trains or buses that a customer used to reach their destination, after subtracting the value of the unused Delta ticket

*Id.*; *see also id.* ¶ 183 ("Delta has expanded the list of eligible expenses that may be covered for this disruption, including flight tickets purchased on other airlines in the same cabin of service or lower, train and bus tickets, rental cars and ride shares."). To receive reimbursement for these eligible expenses, customers were instructed to complete a "Reimbursement Form" and "upload images of your applicable receipts." *Id.* ¶ 183. For any expenses falling outside the two discrete categories specified in the Waiver, Delta's "standard policy" as set forth in its Contracts of Carriage would continue to apply. *Id.* ¶ 184.[7]

Significantly, the Waiver, by its terms, promises reimbursement for alternative ticket fares or transportation only "*after subtracting the value of the [customer's] unused Delta ticket.*" *Id.* Under its Contracts of Carriage, Delta was obligated to refund all customers' unused ticket fares *provided they cancelled their*

---

[7] Delta addressed the limited expense reimbursements available under the standard Contracts of Carriage in prior briefing. *See* ECF No. 44-1 at 24–27.

*travel and requested a refund. See, e.g.*, ECF No. 82-1 at R.19(A). If the Waiver did not reduce value of the reimbursement by the value of the unused ticket, Delta would have been obligated to *both* refund customers' unused ticket fares *and* to reimburse them for alternative travel with no credit for the refund—meaning those customers would recover twice for the same cancellation. The Waiver thus creates a sensible reimbursement obligation that is triggered only if the value of the claimed alternative transportation expense exceeds the value of the customer's unused Delta ticket. *See* TAC ¶ 184.

Additionally, as the TAC acknowledges, the Waiver categorically excludes certain expenses from reimbursement eligibility, namely, "prepaid expenses, including but not limited to hotel reservations at the customer's destination, vacation experiences, lost wages, concerts or other tickets." *See id.* ¶¶ 182–83; *see also id.* ¶ 184 ("Please note, there is no change in policy for prepaid expenses. These continue to be excluded from eligible reimbursement expenses."). That is consistent with limitations in Delta's Contracts of Carriage, which likewise provide that Delta is "not be liable for any … consequential, or special damages arising out of or in connection with carriage or other services performed by Delta, whether or not Delta had knowledge that such damage might be incurred." ECF No. 82-1 at R.19(A), R.24; ECF No. 82-2 at R.191(C)(8); ECF No. 82-3 at R.18(C)(8), R.20(A), R.26.

Thus, if the Waiver constituted a binding modification of Delta's Contracts of Carriage, it expanded Delta's reimbursement obligations with respect to only two limited categories of expenses: (1) ticket fares paid to purchase flights on other airlines to replace a delayed or cancelled Delta flight, and (2) alternative ground transportation to the customer's destination—and in both cases, any reimbursement is reduced by the value of the customer's unused Delta ticket to prevent double recovery. TAC ¶ 184. For any other "out-of-pocket" expense, the Waiver does not alter or expand Delta's obligations. Those expenses continue to be governed by the standard reimbursement terms in the Contracts of Carriage.

## B. Plaintiffs' Claimed Incidental Expenses Unrelated to Replacement Air or Ground Transportation Are Not Reimbursable.

In the TAC, Plaintiffs continue seek reimbursement for thousands of dollars of expenses that have nothing to do with replacement air or ground transportation and are thus plainly not covered by the Temporary Reimbursement Waiver. These include, for example, expenses for hotel accommodations (TAC ¶¶ 38, 170, 267), rideshares and other ground transportation to locations other than to the customer's travel destination (*id.* ¶¶ 90–91, 121), meals (*id.* ¶¶ 59, 89, 94, 99, 102, 121, 267), and other miscellaneous expenses related to lost or delayed baggage (*id.* ¶¶ 60, 101, 121). Whether these expenses are reimbursable is determined by the Contracts of Carriage at the time Plaintiffs purchased their tickets, not the Contracts as modified by the Waiver. *See id.* ¶ 184. And as the Court determined in the May 2025 Order,

20

under Delta's Contracts of Carriage, these expenses are either not reimbursable, or, to the extent they are, Plaintiffs' own allegations confirm they have already received the required reimbursement. *See* ECF No. 60 at 62–63 ("Plaintiffs' own allegations belie their argument that Delta did not comply with the Contracts of Carriage, or that the Contracts are ambiguous with respect to reimbursements.").

Plaintiffs also continue to seek reimbursement for expenses that are plainly "incidental" or "consequential" damages, and thus not subject to reimbursement. *See, e.g.*, ECF No. 82-3 at R.18(C)(8), R.20(A), R.26. These include Plaintiff Bajra's "hotel nights which he did not use because of Delta's cancelation" (TAC ¶ 38), Plaintiff Brennan's $10,000 anniversary cruise (*id.* ¶ 53), Plaintiff Kuk's "Airbnb which he was unable to use" (*id.* ¶ 71), Plaintiff Muzzi's "cancellation/no-show fees" (*id.* ¶ 121),[8] and Plaintiff Moorman's "parking ticket" (*id.* ¶ 101). Plaintiffs' claims to recover these expenses were already dismissed under the May 2025 Order, ECF No. 60 at 63–64, and the TAC provides no basis to revive them.

C. **Plaintiffs' Replacement Air or Ground Transportation Expenses Are Reimbursable Only for Amounts in Excess of Their Unused Delta Tickets.**

Of the six remaining Plaintiffs, only four allege expenses that are plausibly covered under the Temporary Reimbursement waiver.

---

[8] Indeed, even under the Waiver, such "prepaid expenses" like "hotel reservations at the customer's destination" and "vacation experiences" are expressly excluded. TAC ¶ 182–84.

*Plaintiff Bajra* alleges he paid $2,299 for two roundtrip tickets on Delta flights from Denver to Amsterdam. TAC ¶ 31. He further alleges that after Delta cancelled his outbound flight on July 20, 2024, he paid "approximately $1,500" for tickets on another airline's flight to Amsterdam, and that he later returned from Amsterdam using his initial Delta ticket. *Id.* ¶¶ 32–36. He also alleges that he submitted a request for reimbursement of his expenses, including the tickets on the replacement flight. *Id.* ¶ 40. While Bajra fails to plead the value of his unused Delta ticket, so long as it did not exceed the "approximately $1,500" he paid for his replacement tickets, he would appear to have a plausible claim—albeit one that is significantly less than the $1,975 he alleges he is owed. *Id.* ¶ 38. Bajra, like the other Plaintiffs, is also seeking a refund of the unused portion of his Delta ticket (*see id.* ¶¶ 281–301), so recovery of the entire alternative travel expense *and* a refund of his unused Delta ticket would amount to an impermissible double recovery.

*Plaintiffs Kuk and Muzzi* make similar allegations. Like Plaintiff Bajra, Kuk and Muzzi purchased tickets on Delta flights that were ultimately cancelled, and they each allege to have subsequently booked replacement tickets for flights on other airlines and submitted requests for reimbursement. *Id.* ¶¶ 67–70, 72, 116–17, 123. While Kuk and Muzzi fail to specifically plead that the value of their unused Delta tickets (for which they seek refunds) do not exceed the value of their replacement tickets, drawing inferences in their favor, they have stated plausible claims for

22

relief—but solely for the additional amounts they paid for their replacement tickets above their original fare.

*Plaintiff Moorman* also appears to state a plausible claim for relief, but only to the extent the cost of her alternative ground transportation exceeds the value of her unused Delta tickets (which is unclear on the face of the TAC). Moorman purchased five roundtrip tickets on Delta flights from Cincinnati to Puerto Escondido, Mexico. *Id.* ¶ 79. The final leg of her return flight (from Minneapolis to Cincinnati) was delayed and ultimately cancelled. *Id.* ¶¶ 83–84. Moorman eventually rented a car and drove with her family back to Cincinnati, incurring expenses including rental fees, gasoline, and tolls. *Id.* ¶¶ 95–98. Because the Waiver covers "[a]lternative transportation methods such as rental cars … that a customer used to reach their destination," these expenses would appear to be reimbursable. *Id.* ¶ 184. However, to the extent the evidence later shows the value of her unused Delta tickets (for which she is seeking refunds) exceeds the costs of her alternative transportation, Moorman's claim would not be viable.

The remaining two Plaintiffs do not state plausible claims for relief. *Plaintiff Brennan* paid $1,281.12 for two roundtrip tickets on Delta flights from Tampa to Seattle. *Id.* ¶ 46. After flying the first leg of his rebooked outbound flight and landing in Atlanta, Brennan's connecting flight to Seattle was cancelled. *Id.* ¶ 47. Brennan ultimately decided to return home and purchased Greyhound bus tickets

from Atlanta back to Tampa. *Id.* ¶ 50. Even if alternative transportation back to a customer's departure location were covered under the Waiver, Brennan admits Delta has already provided him a reimbursement of $219.45 for his bus tickets. *Id.* ¶ 53. While Brennan has stated a plausible claim for a refund under Count IV, his claim for additional reimbursement, beyond what he has already received, fails.

Finally, ***Plaintiff Khaku*** does not seek reimbursement for any expenses incurred for alternative travel to his destination, and thus his claim is not covered by the Waiver. Khaku paid $5,108 for four roundtrip tickets on Delta flights from Orlando to Dubai. *Id.* ¶ 57. On July 22, 2024, the final leg of Khaku's connecting return flight from JFK to Orlando was delayed and later cancelled. *Id.* ¶ 58. As Khaku admits in the TAC, Delta subsequently rebooked and paid for a replacement flight for Khaku and his family with United Airlines departing two days later. *Id.* Khaku thus did not incur any additional out-of-pocket expense for alternative transportation back to Orlando. *Id.* While he decided to rent a car and drive to Allentown, Pennsylvania to visit family during the two days between his original flight and his replacement flight on United, that expense was not transportation to "reach [his] destination" as would be covered under the Waiver, *id.* ¶ 184, and in any event, Khaku admits Delta provided him a reimbursement of $650 plus 10,000 SkyMiles for the rental car anyway. *Id.* ¶ 61. Khaku thus has no claim for any expenses. And he also has no claim for a refund under Count IV, because he admits

24

that Delta ultimately transported him to his destination in exchange for his original ticket fare. *Id.* ¶ 58; *see also* ECF No. 44-1 at 21–22 (citing *Dusko v. Delta Air Lines, Inc.*, 20-cv-01664, slip op., ECF No. 70 at 13–14 (N.D. Ga. March 2, 2022)).

The analysis above makes two things clear: most of Plaintiffs' claims should once again be dismissed, and any surviving claims will be highly individualized such that they cannot possibly meet the requirements for class certification.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Delta's motion and enter an order, consistent with the positions set forth in Appendix A, as follows:

(i)      Count I should be dismissed with prejudice;

(ii)      Count II should be dismissed with prejudice as to Plaintff Khaku, and as to the remaining Plaintiffs to the extent it seeks damages not covered by the Temporary Reimbursement Waiver (*i.e.*, expenses other than amounts incurred for replacement air or ground transportation after subtracting the amount of the unused portion of Plaintiffs' Delta ticket fares);

(iii)      Count III should be dismissed with prejudice;

(iv)      Count IV should be dismissed with prejudice as to Plaintiff Khaku; and

(v)      Count V should be dismissed with prejudice.

Dated: March 4, 2026

Respectfully submitted, [9]

/s/ *Michael R. Baumrind*

Michael S. Mitchell
District of Columbia Bar No. 986708
(admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
mmitchell@bsfllp.com

Marc Ayala
(admitted *pro hac vice*)
New York Bar No. 5018388
Andrew P. Steinmetz
(admitted *pro hac vice*)
New York Bar No. 5574819
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
(914) 749-8200
mayala@bsfllp.com
asteinmetz@bsfllp.com

James Lee
(admitted *pro hac vice*)
New York Bar No. 4422382
Florida Bar No. 67558
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street, Suite 2800
Miami, FL 33131
(305) 357-8434
jlee@bsfllp.com

Frank M. Lowrey IV
Georgia Bar No. 410310
Jane "Danny" Vincent
Georgia Bar No. 380850
Michael R. Baumrind
Georgia Bar No. 960296
**BONDURANT MIXSON
 & ELMORE, LLP**
One Atlantic Center
Suite 3900
1201 West Peachtree Street NW
Atlanta, Georgia 30309
(404) 881-4100
lowrey@bmelaw.com
vincent@bmelaw.com
baumrind@bmelaw.com

---

[9] Pursuant to Local Rule 7.1D, counsel for Delta certifies that this brief was prepared with a font and point selection approved in Local Rule 5.1B.

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2026 the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED COMPLAINT was filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to Plaintiffs' counsel of record.

> *s/ Michael R. Baumrind*
> Michael R. Baumrind
> Georgia Bar No. 960296
> **BONDURANT MIXSON**
> **& ELMORE, LLP**
> One Atlantic Center
> Suite 3900
> 1201 West Peachtree Street NW
> Atlanta, Georgia 30309
> (404) 881-4100
> baumrind@bmelaw.com

**Appendix A**

**Summary of Delta's Position on Claims in Consolidated Third Amended Complaint (ECF No. 82)**

| Count | Claim | Plaintiff(s) | Damages Sought | Delta's Position |
|---|---|---|---|---|
| I | Violation of the Montreal Convention | Bajra, Khaku, Kuk, Moorman, Muzzi | Expense Reimbursement | ***Count I should be dismissed with prejudice in its entirety*** because the Court's May 2025 Order held that Plaintiffs' claims fall outside the scope of the Montreal Convention.<br><br>***In the alternative***, if Court determines that Count I may proceed, all other claims asserted on behalf of the International-Travel Plaintiffs (Bajra, Khaku, Kuk, Moorman, and Muzzi) are preempted and must be dismissed. |
| II | Breach of International & Canadian Contracts of Carriage *as modified* by the Temporary Reimbursement Waiver | Bajra, Khaku, Kuk, Moorman, Muzzi | Expense Reimbursement | ***Count II should be dismissed with prejudice as to Plaintiff Khaku*** because he fails to state a plausible claim for damages covered by the Temporary Reimbursement Waiver.<br><br>As to the remaining Plaintiffs, ***Count II should proceed only to the extent Plaintiffs seek damages plausibly covered by the Temporary Reimbursement Waiver*** (*i.e.*, expenses incurred for alternative air or ground transportation after subtracting the value of the unused portion of their Delta ticket fares). ***Claims for any other expenses should be dismissed with prejudice*** under the reasoning in the Court's May 2025 Order.<br><br>***In the alternative***, if the Court determines Count I may proceed, Count II is preempted and should be dismissed with prejudice in its entirety. |

1

| Count | Claim | Plaintiff(s) | Damages Sought | Delta's Position |
|---|---|---|---|---|
| III | Breach of International & Canadian Contracts of Carriage *without* Temporary Reimbursement Waiver modification | Bajra, Khaku, Kuk, Moorman, Muzzi | Expense Reimbursement | ***Count III should be dismissed with prejudice in its entirety*** because the Court's May 2025 Order already determined that Plaintiffs have no plausible claim for expense reimbursement under Delta's unmodified Contracts of Carriage.<br><br>The incorporation of the Montreal Convention's liability rules into the Contracts of Carriage does not afford a plausible basis for recovery under Count III because either (i) the Convention provides a basis for liability, in which case Plaintiffs may proceed under Count I but Count III is preempted and must be dismissed, or (ii) the Convention does not provide a basis for liability, in which case Count III also must be dismissed. |
| IV | Breach of contract for failure to refund fare | All Plaintiffs | Ticket Fare Refunds | ***Count IV should be dismissed with prejudice only with respect to Plaintiff Khaku*** because he admits he accepted a rebooked flight for which Delta paid and thus fails to state a plausible claim for a refund.<br><br>***Delta does not seek dismissal of Count IV with respect to the other Plaintiffs***. |
| V | Breach of Domestic Contract of Carriage *as modified* by the Temporary Reimbursement Waiver | Brennan | Expense Reimbursement | ***Count V should be dismissed with prejudice*** because Plaintiff Brennan fails to state a plausible claim for damages covered by the Temporary Reimbursement Waiver.<br><br>***In the alternative***, if the Court determines Count I may proceed, Count V is preempted and should be dismissed with prejudice in its entirety |